IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| Travis Jackson Marron,<br>    Plaintiff, | )<br>)<br>) | |
| v. | ) | 1:12cv468 (TSE/TRJ) |
| John Jabe,<br>    Defendant. | )<br>)<br>) | |

MEMORANDUM OPINION

Travis Jackson Marron, a Virginia inmate proceeding pro se, has filed a civil rights action pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights were violated when two religious non-music tapes were confiscated during his former incarceration at Lawrenceville Correctional Center ("LCC"). The matter is now before the Court on defendant John Jabe's Renewed Motion for Summary Judgment.[1] Defendant simultaneously filed a supplemental memorandum of law with exhibits, and provided plaintiff with the notice required by Local Civil Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). On September 16, 2013, plaintiff submitted a Brief & Opposition to Defendant's Renewed Motion for Summary Judgment, along with a supporting memorandum and an Affidavit to Sincerity of Testimony of Faith.[2] After careful consideration, defendant's Renewed Motion for Summary Judgment must

---

[1] Both parties previously filed motions for summary judgment which were denied without prejudice to renewal by Memorandum Opinion and Order dated July 30, 2013. Dkt. 44 - 45.

[2] Plaintiff's "Brief & Opposition Motion" is not sworn or signed under penalty of perjury. As a general rule, the non-moving party may not defeat a properly-supported summary judgment motion by simply substituting the "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990). Even where the non-moving party in such a situation is a pro se prisoner entitled to liberal

1

be granted, and summary final judgment must be entered in his favor. Also pending before the Court are plaintiff's Motion to Compel Discovery and defendant's Motion for Protective Order, which will be denied, as moot.

## I. Background

In the amended complaint which is the operative complaint in this case, Dkt. 11, plaintiff Marron identifies himself as a Sunni Muslim and alleges that his rights under the First Amendment, the Equal Protection Clause, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §2000cc, were violated by a Virginia Department of Corrections ("VDOC") policy requiring non-music religious CD's and cassette tapes to be purchased exclusively from a single vendor, Jones Express Music ("JEM").

The policy at issue was implemented in a memorandum issued on April 30, 2010 by John Jabe, a former VDOC director and the defendant in this lawsuit. Cei Aff. ¶ 4; Ex. A.[3] Prior to that time, offenders were permitted to order cassette tapes or CD's through multiple vendors, but the policy was changed because the use of multiple vendors resulted in increased costs and a lack of standardization, and also posed security problems. Both CD's and cassette tapes present security challenges to VDOC personnel because it is necessary to listen to the entire disc or tape to determine if its content has been altered or supplemented. Cei Aff. ¶ 5. By using a single

---

construction of his pleadings, a "declaration under oath ... is not enough to defeat a motion for summary judgment. He has to provide a basis for his statement. To hold otherwise would render motions for summary judgment a nullity." Campbell-El v. Dist. of Columbia, 874 F.Supp. 403, 406 - 07 (D.C. 1994). Here, however, as will be seen, even if the substance of plaintiff's Brief & Opposition is considered, defendant is entitled to the summary judgment he seeks.

[3]Affiant Louis B. Cei, Ph.D., is both the Special Programs Manager for VDOC and the Chair of its Faith Review Committee. Cei Aff. ¶ 1.

2

vendor for these items, VDOC is able to decrease the chances of contraband entering its facilities, for example by CD's or tapes being switched in their packaging or by having their contents altered. Id. When a single vendor is used, a particular disc or tape need only be approved once, and it then is added to the list of items that offenders are permitted to order. Id. In addition, use of a single vendor makes the ordering process more uniform and standardized, which is easier for VDOC personnel to monitor for security purposes. Id. The vendor has a contractual obligation to ensure that the proper CD's and tapes are provided to VDOC so that contraband does not enter the prison system, failing which the contract is subject to cancellation. Thus, there is a large financial incentive for the vendor to see that discs and tapes sent to VDOC are properly labeled and have not been altered. Id.

On August 18, 2011, VDOC's single-vendor policy was modified in a memorandum issued by defendant Jabe, stating that an inmate could order religious non-music CD's through the chaplain or other designated staff at his institution if JEM were unable to provide that particular CD. Cei Aff. ¶ 6; Ex. A. Tapes and CD's procured in this manner from a vendor other than JEM remained subject to individual review by VDOC staff. Id. Inmates who obtain religious non-music CD's in this fashion are not permitted to keep them in their possession; rather, the CD's are maintained in the Chaplain's library or the facility's library and are available for loan to all offenders. Id.

In May, 2012, the contract between JEM and VDOC was terminated, and since then VDOC offenders have been required to purchase CD's and cassette tapes from a new VDOC-approved vendor, Music By Mail. Cei Aff. ¶ 7.

On October 4, 2011, while JEM was still the VDOC-approved vendor, plaintiff submitted

3

a Periodical/Property Request Form requesting items from another company, Dar-us-Salam Publications. Cei Aff., ¶ 8; Ex.B. Plaintiff requested a book - pack of (7) lessons; a book of Tawheed; a prayer rug; and twenty (20) bookmarks. The order was approved and arrived art GCC on October 18, 2011. Id. When it did, it was discovered that the "book - pack of (7) lessons" actually consisted of a pack of pamphlets, and also contained two religious non-music cassette tapes. Cei Aff. ¶ 9. Pursuant to the policies outlined above, the tapes were rejected for intake because they did not come from JEM or from the Chaplain or his designated staff. Id. In addition, Marron's possession of the tapes was disallowed because he did not possess a cassette tape player, and VDOC Operating Procedure 802.1 allows offenders to possess CD's or cassette tapes only if they also have players to utilize those items. Cei Aff. ¶ 10; Ex. C; see also Plf.'s Brief & Opposition at ¶ 5 ("Plaintiff at the time of ordering his books and receiving his books and Cassettes did not own a C.D. or Cassette Player...."). When plaintiff arrived at GCC's intake department he was told that he could not possess the tapes and he filled out paperwork to have them mailed to a relative, but subsequently he asked the property officer not to send the tapes away because he intended to grieve their denial. Id.

In this action pursuant to § 1983, plaintiff alleges that the decision not to permit him to possess the two religious non-music tapes violated his rights under the Equal Protection Clause, the First Amendment, and RLUIPA. As relief, plaintiff requests an award of nominal and punitive damages, as well as a declaratory judgment that his rights were violated. Dkt. 11 at 4.

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (moving party bears the burden of persuasion on all relevant issues). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the non-moving party to point out the specific facts which create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Those facts for which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence ... create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita, 475 U.S. at 587.

### III. Analysis

For the reasons which follow, plaintiff cannot prevail on any of the claims he asserts.

A. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment protects against arbitrary classifications by state actors. See U.S. Const. amend. XIV, § 1. To bring an equal protection claim, a prisoner must plead sufficient facts to make a threshold showing "that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Veney v. Wyche, 293 F.3d 726, 730-31 (4th Cir. 2002) (quoting Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001)). Only after satisfying this threshold requirement will the Court determine whether the disparate treatment at issue was justified. Id. at 731. If plaintiff does not make a threshold showing of disparate treatment, the Court need not assess whether the treatment can be justified under the appropriate level of scrutiny. Ephraim v. Angelone, 313 F. Supp. 2d 569, 573-74 (E.D. Va. 2003); see also Morrison v. Garraghty, 239 F.3d 648, 655 (4th Cir. 2001).

In this case, plaintiff appears to allege disparate treatment from inmates seeking to purchase religious music CD's. See Plf.'s Brief & Opposition, Dkt. 56 at 5 ("[R]eligious prisoners who listen to recorded religious music as worship are being afforded the opportunity to exercise that practice through the purchase and possession of Compact Discs (CDs) and cassettes while the plaintiff, whose religion does not allow music, but rather requires that he learn his religion from the mouths of the people of knowledge, is being denied access to his own recorded worship materials and must rely upon the state to purchase and possess those religious education materials for him.") However, these generalized and unsworn allegations fail to make a threshold showing that plaintiff's treatment at GCC was disparate from that of others in similar situations. Indeed, plaintiff simply states his religion condemns listening to music and that others

who are "similar[ly] situated" are allowed to buy music that suits their beliefs. Dkt. 11, Am. Compl. at 3. Plaintiff fails to specify who the allegedly similarly-situated "religious prisoners who listen to recorded music as worship" are, and his allegations that he is "similarly situated" to offenders who hold religious beliefs different from his is inaccurate. Moreover, plaintiff does not claim that the VDOC policy at issue precludes him from purchasing religious music; rather, he states that it is his religion that prevents him from listening to music. Finally, plaintiff does not show, or even allege, that the allegedly disparate treatment he has suffered was the result of discriminatory intent. Accordingly, no threshold showing of an equal protection violation has been made, cf. Veney, 293 F.3d at 730-31, so no assessment is warranted of whether the treatment plaintiff describes is justifiable, Ephraim, 313 F. Supp. at 573-74, and defendant is entitled to the summary judgment he seeks on plaintiff's claim that he suffered a violation of his right to equal protection.

2. RLUIPA

Under RLUIPA, the government is prohibited from acting in ways that impose a "substantial burden on the religious exercise of a person residing in or confined to an institution," unless the government demonstrates that the imposition of that burden furthers a "compelling governmental interest" by the least restrictive means. 42 U.S.C. § 2000cc-1(a)(1)-(2). Although RLUIPA does not define the term "substantial burden," the United States Court of Appeals for the Fourth Circuit has held that, under RLUIPA, a "substantial burden on religious exercise occurs when a state or local government, through act or omission, 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir.2006) (quoting Thomas v. Review Bd. of Indiana Employment Security Div., 450

U.S. 707, 718 (1981)). "On the opposite end of the spectrum ... a government action or regulation does not rise to the level of a substantial burden on religious exercise if it merely prevents the adherent from either enjoying some benefit that is not otherwise generally available or acting in a way that is not otherwise generally allowed." Adkins v. Kaspar, 393 F.3d 559, 570 (5th Cir. 2004). "Religious exercise" in this context includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A).

A plaintiff asserting a claim under RLUIPA bears the initial burden of showing by a preponderance of the evidence that: (1) he or she seeks to engage in an exercise of religion; and (2) the challenged practice substantially burdens that exercise. 42 U.S.C. § 2000cc-2(b). Once the plaintiff establishes a *prima facie* case, the burden of persuasion shifts to the defendants to show that their practice is the least restrictive means of furthering a compelling government interest. Lovelace, 472 F.3d at 185 (citing 42 U.S.C. § 2000cc-1(a)). Although RLUIPA forbids judicial inquiry into the question of whether a particular belief or practice is "central" to a prisoner's religion, 42 U.S.C. § 2000cc-5(7)(A), only beliefs or practices that are both sincerely held and rooted in religious belief fall under the protection of RLUIPA. See Cutter v. Wilkinson, 544 U.S. 709, 725 n. 13 (2005) (noting that under RLUIPA, "prison officials may appropriately question whether a prisoner's religiosity, asserted as a basis for a request for accommodation, is authentic" and whether his "professed religiosity" is "sincere").

Pursuant to the foregoing authorities, the starting point for analysis of a claim of denial of free exercise under either the First Amendment or RLUIPA is the determination of whether the plaintiff actually seeks to engage in an exercise of sincerely-held religious beliefs. The threshold

requirement is satisfied in this case, as plaintiff attests,[4] and defendants do not dispute, that plaintiff is a sincere adherent of the Sunni Muslim faith. Yoder, 406 U.S. at 215 - 16. However, plaintiff fails to carry the second component of his initial burden, because he does not demonstrate that VDOC's single-vendor policy places a substantial burden on his exercise of that religion.

RLUIPA itself does not define the term "substantial burden." See Couch v. Jabe, 679 F.3d 197, 200 (4th Cir. 2012). The Fourth Circuit Court of Appeals has found that a substantial burden "is one that put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs, or one that forces a person to choose between following the precepts of h[is] religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of h[is] religion ... on the other hand." Id. at 200, quoting Lovelace, 472 F.3d at 187. To satisfy this test, a plaintiff "is not required ... to prove that the exercise at issue is required by or essential to his religion." Krieger v. Brown, 2012 WL 5447889 at *3 (4th Cir. Nov. 8, 2012). However, "at a minimum the substantial burden test requires that a RLUIPA plaintiff demonstrate that the government's denial of a particular religious observance ... was more than an inconvenience to one's religious practice." Smith v. Allen, 502 F.3d 1255, 1278 (11th Cir. 2007); see Krieger, 2012 WL 5447889 at *4-5 (affirming grant of summary judgment where inmate adherent of the Asatru faith failed to "show that deprivation of an outdoor worship circle and the requested sacred items violated his religious beliefs."). In conducting the substantial burden inquiry, a court properly may consider whether the inmate retains other means for engaging in a particular religious activity in assessing whether a denial of his preferred method

---

[4] See plaintiff's Affidavit to Sincerity of Testimony of Faith, Dkt. 57.

9

imposes a substantial burden. Id.

In Shabazz v. Va. Dep't of Corrections, 2013 WL 1098102 at *8 (E.D. Va. Mar. 15, 2013), the court determined that plaintiff, a member of the Nation of Islam, "fail[ed] to demonstrate a substantial burden on his religious exercise simply because [VDOC's] single vendor [CD] policy hamper[ed] one method for his to study the sermons" of Elijah Muhammad and Minster Louis Farrakhan. Instead, "[a]t best, the record indicate[d] [VDOC's] single vendor policy hamper[ed] Shabazz's study of the required sermons in his preferred manner." Id. The same is true in this case. As with the plaintiff in Shabbazz, Marron has the opportunity to order written materials from the vendor of his choice, Dar-Us-Salam Publications. Cei Aff. ¶ 8. He may also check out non-music religious CD's and tapes from both the Chaplain's library and the facility library if, as he states, his religion prohibits him from ordering such materials from a non-Muslim vendor which also sells music. Id. Thus, despite being unable to order to non-music religious CD's for his personal use from Dar-Us-Salam, Marron has ample opportunity to exercise his religion without being substantially pressured "to modify his behavior and to violate his beliefs." Couch, 679 F.3d at 200. Under these circumstances, plaintiff has failed to meet his burden to show that the single-vendor policy he challenges places a substantial burden on his exercise of his religion.[5]

---

[5]In his Brief and Opposition, plaintiff asserts that without the ability to order CD's from a "lawful source," he "cannot learn or practice [his] religion at all and if [he] doesn't learn [his] religion [he] will be a disbeliever and [he] fear[s] nothing not even death itself except the wrath of Allah...." Id. at 5. Such generalized and non-specific explanations do not coherently or sufficiently articulate the existence of a substantial burden on plaintiff's religious practice. See Krieger, 2012 WL 5447889 at *3 (inmate's "blanket assertion" that "the sacred items were 'necessary to preform 'well established rituals'" was insufficient to demonstrate that denial of the items amounted to a substantial burden). Nor would such conclusory statements, even if made under penalty of perjury, see n. 2, infra, be sufficient to defeat defendant's summary judgment

Moreover, even if the single-vendor requirement were deemed to substantially burden plaintiff's religious practice, defendant in this case has shown that the practice is the least restrictive means of furthering a compelling government interest. "[P]rison security is a compelling state interest ...." Cutter, 544 U.S. at 725 n.13 (2005). For that reason, RLUIPA "must be applied 'with particular sensitivity to security concerns'," as it is not meant "to elevate accommodation of religious observances over an institution's need to maintain order and safety." Couch, 679 F.3d at 201, quoting Cutter, 544 U.S. at 722. Prison cost control also is a compelling government interest. Coleman v. Jabe, 2013 WL 4084762 (W.D. Va. Aug. 13, 2013), citing Baranowski v. Hart, 486 F.3d 112, 125 (5th Cir. 2007).

To show that a policy is the "least restrictive means" of furthering a compelling government interest, prison officials must demonstrate that they have "consider[ed] and reject[ed]" less restrictive alternatives to the challenged practice. Couch, 679 F.3d at 203. When prison administrators explain their challenged policies a court must give deference to those explanations. See Lovelace, 472 F.3d at 182 ("We confirm emphatically that any substantive explanation offered by the prison must be viewed with due deference.").

In this case, defendant has established that the single vendor policy is the least restrictive means of furthering compelling government interest. Before implementing the policy, VDOC officials considered and rejected the alternative of allowing offenders to order CD's and tapes through multiple vendors. Cei Aff. ¶ 4. However, such a practice ultimately was rejected on the grounds that it would have resulted in lack of standardization, increased costs, and heightened

---

motion. See United States v. Roane, 378 F.3d 382, 401 (4th Cir. 2004) (finding that "airy generalities" and "conclusory assertions" cannot "stave off summary judgment").

security risks. Id. If inmates had been allowed to order from their vendors of choice, VDOC would have been forced to expend valuable resources to review each vendor and each piece of merchandise entering its facilities. Id. On the other hand, for the reasons stated by Dr. Cei in the affidavit described above, the single vendor policy VDOC chose to implement is the least restrictive means of furthering the compelling governmental interests of security and cost control. In assessing an analogous VDOC single-vendor policy for the purchase of prayer oil, the court in Coleman observed:

> ... VDOC's interests in security and cost control go hand-in-hand. The single-vendor prayer-oil policy furthers institutional security because Keefe Commissary is a large, reputable vendor with strong financial incentive to ensure that the prayer oil it ships to VDOC is free of alcohol, drugs and other contraband. ... And the single-vendor policy allows VDOC to maintain its present security standards without the need to expend resources evaluating each new vendor and each new vendor's prayer oil to ensure compliance with VDOC specifications. Likewise, a contract with a single, reputable vendor gives the vendor a powerful incentive to control quality, and permits VDOC to devote its resources to concerns other than inspecting individual bottles of prayer oil for contraband.

Coleman, 2013 WL 4084762 at *4. Although the court in Coleman determined that in that case, the plaintiff's RLUIPA challenge to VDOC's single-vendor CD policy was moot, it observed that "if the controversy were viable, [the court] would grant the defendants' motion for summary judgment for reasons substantially similar to those underlying the court's prayer-oil holding."[6] Id.

---

[6] In fact, defendant argues that plaintiff's RLUIPA claim in this case also is moot, because in the initial complaint plaintiff alleged that ordering through JEM violated his religious precepts, and JEM is no longer VDOC's supplier of tapes and CD's. Def. Supp. Mem. at 6, n.2 . Because an actual controversy is required to exist through all stages of review, defendant contends that plaintiff's claim is moot "if [the] complaint is specific to J.E.M." Plaintiff in his Brief & Opposition counters that "[his] claims were not specific to J.E.M. but were to John Jabe and any vendor he gave a [sic] unlawful contract to...." Id. at 6. As dismissal of the instant claim as moot for the reason defendant suggests would open the door to plaintiff's ability to refile the same

Here, then, plaintiff's RLUIPA claim fails both because he has not shown that the policy at issue places a substantial burden on his ability to exercise his religion, and because defendant has demonstrated that the policy is the least restrictive means of furthering compelling government interests. Accordingly, summary judgment must be granted to the defendant on this issue.

3. First Amendment

Plaintiff's claim that the confiscation of his non-music religious tapes violated his rights under the First Amendment fares no better. The First Amendment protects an individual's right to the free exercise of religion. U.S. Const. amend I. Although incarcerated, a prisoner still "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974). However, as with a claim arising under RLUIPA, a prisoner to recover on a free exercise claim must demonstrate that defendant's conduct has substantially burdened his religious exercise. Shabazz, 2013 WL 1098102 at *9, citing Whitehouse v. Johnson, 2011 WL 5843622 (E.D. Va. Nov. 18, 2011) at *5. "RLUIPA provides considerably more protection for an inmate's religious exercise than does the Free Exercise Clause of the Constitution of the United States." Lord Versatile v. Johnson, 2011 WL 5119259 at *4 (E.D. Va. Oct. 27, 2011). Thus, "[w]here an inmate has not put forth sufficient evidence under RLUIPA to demonstrate a substantial burden on his religious exercise, his claim fails under the Free Exercise Clause of the First Amendment as well." Van Wyhe v. Reisch, 581 F.3d 639, 657-58 (8th Cir 2009).

---

claim against Music By Mail, VDOC's current supplier of tapes and CD's, the Court will credit plaintiff's explanation that his claim was intended to challenge the single-vendor policy as a whole and will reach the merits of the claim.

13

Accordingly, for the reasons discussed above in connection with plaintiff's RLUIPA claim, defendant is entitled to summary judgment on his free exercise claim as well.[7]

4. Pending Motions

On September 3, 2013, plaintiff filed a Motion to Compel Discovery, seeking "all Documents and Electronically stored information related to [VDOC's] contracts with" Keefe Commissary, JEM, and Music by Mail. Plaintiff also requests that the Court "compel a[n] investigation by the Federal Bureau of Investigations into the conduct by the V.D.O.C." Dkt. 58. Defendant filed a response opposing plaintiff's discovery requests, and also moved for a protective order. Dkt. 59-60. Because it is apparent for the reasons previously discussed that defendant is entitled to summary final judgment on plaintiff's claims, and because the documents plaintiff requests would have no legal bearing on that result, both plaintiff's Motion to Compel Discovery and defendant's Motion for Protective Order will be denied, as moot.

IV. Conclusion

For the foregoing reasons, defendant's Renewed Motion for Summary Judgment must be granted, and summary final judgment must be entered in his favor. Plaintiff's Motion to Compel Discovery and defendant's Motion for Protective Order will be denied, as moot. An appropriate Order shall issue.

Entered this 14th day of February 2014.

Alexandria, Virginia

T. S. Ellis, III
United States District Judge

---

[7] Defendant also asserts qualified immunity with respect to plaintiff's claims. Def. Supp. Mem. at 12-14. However, because the Court concludes that plaintiff has failed to establish that a violation of his constitutional rights occurred, the issue of qualified immunity need not be addressed. Shabazz, 2013 WL 1098102 at *9 n. 20.

14